[No. 25505. *En Banc.* October 26, 1936.]

MILWAUKEE LAND COMPANY, *Respondent*, v. THE STATE OF WASHINGTON, *Appellant*.[1]

*The Attorney General* and *E. P. Donnelly, Assistant,* for appellant.

*A. N. Whitlock, O. G. Edwards,* and *A. J. Laughon,* for respondent.

MITCHELL, J.—This is an appeal from a judgment against the state for the recovery of taxes paid under protest by the respondent, Milwaukee Land Company, a corporation, for the months of August and September, 1933, under chapter 191, Laws of 1933, p. 869, commonly known as the occupation or excise tax law.

Respondent is an Iowa corporation, and at all times since 1907 has been qualified to do, and has engaged in, business in the state of Washington. The objects and purposes of respondent, as expressed in its articles of incorporation, are as follows:

"The general nature of the business of this corporation is the buying, holding, improving, leasing, and sell-

[1]Reported in 61 P. (2d) 996.

ing lands and town lots in the States of Iowa, Wiscon, Illinois, Indiana, Missouri, Kansas, Minnesota, Nebraska, North Dakota, South Dakota, Michigan, Montana, Idaho, Washington, Oregon, and Wyoming; and this corporation shall be vested with full power, conformably with the laws of the aforesaid states, respectively, to take and hold real estate, lay out towns and town lots, make contracts with corporations or individuals for the purchase, sale, and mortgage of real or personal property. Also to purchase, acquire, own, hold, sell, and dispose of any and all interests in lands, including timbered land and timber, in any of said states, in so far as the laws of said respective states permit; to manufacture and sell lumber and timber products; to erect, acquire, own, and operate saw mills, manufacturing plants, logging roads, machinery, equipment, and other facilities convenient for carrying on said business; and to do any other act or thing necessary for or incidental to the business in which it is engaged. It may have and use a common seal, which it may alter or change at pleasure, and may sue or be sued, and may from time to time make all such by-laws and regulations for its government and the transaction of its business as may be deemed expedient and not inconsistent with these Articles or the laws of the states above mentioned.''

Respondent purchased large quantities of timber lands in this state prior to 1914. In December, 1926, it acquired 15,499.31 acres by exchanging some of its timber lands. In December, 1931, it acquired 320 acres of timber lands and $722.75 by the exchange of some of its own holdings, and in April, 1933, it acquired 4,452.67 acres of timber lands by the exchange of other lands.

On January 1, 1933, the total acreage held by respondent in this state was 198,344.67 acres and the standing timber on another tract of 632.70 acres.

During the months of August and September, 1933, respondent was paid stumpage, as the timber was cut, under an outstanding contract; and on September 11,

1933, a tract was sold by it for $10,250, $2,562.50 of which was paid in cash and the remainder was paid by two promissory notes, payable one and two years after that date.

On August 17, 1933, respondent sold a tract of cut-over land in Lewis county for $251.85, upon which $65 in cash was paid, and the balance was to be paid in three annual payments.

Except as otherwise stated above, all the lands owned by the respondent in this state were acquired prior to 1914. In the transaction of its business in this state, the respondent maintains an office in Seattle. Its resident officers are a vice-president, a general manager, an assistant general manager, and a stenographer. Its books of account are kept by the assistant auditor of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, at Seattle, and the vice-president of the land company is also the vice-president of the railroad company at Seattle, Washington. The auditing department of the railroad company has two bookkeepers, who also keep the books of the land company. The president of the land company resides in Chicago, and he is also the vice-president of the railroad company. When a sale of respondent's timber is made, which requires a cruise of the timber to determine the amounts to be paid from time to time, dependent upon the amount of timber cut, as provided in sales contracts, such cruisers are furnished and paid by the respondent.

It was the tax paid under protest, in the sum of $33.58, by the respondent on its transactions in August and September, 1933, above set out, upon which this action arose.

The only question in the case is whether the respondent was engaged in business that was taxable, under

the terms of the occupational tax act, during the months for which the taxes were paid.

The theory of the respondent, upon which it appears the judgment was entered, was that, because respondent's property was acquired by it prior to the act of 1933, the most of it prior to 1914, and because respondent had done nothing with respect to it for several years, other than caring for it and selling the timber thereon, as it could find purchasers therefor, its operations, as carried on in August and September, 1933, did not constitute a business or occupation within the act. We cannot agree to that contention.

Respondent has not in any way changed its articles of incorporation since coming into this state. Purchasing, holding, exchanging, and selling lands and timber are each and all within respondents's purposes and business. In order to come under the act, it was not required that, in any given month or other appreciable period of time, respondent should engage in all or even most of the specified purposes of its incorporation. If it engaged in any one or more of them, necessary and usual in its general scheme of business, then it engaged in, and was promoting, that business or occupation. The business or occupation of buying and selling land and timber requires both buying and selling, and the doing of either at a given time is carrying on that business or occupation.

Judgment reversed.

MILLARD, C. J., MAIN, TOLMAN, BEALS, and BLAKE, JJ., concur.

GERAGHTY, J. (dissenting)—I find myself unable to concur in the majority opinion. I do not think the respondent is engaged in business in the sense contemplated by the statute under which the tax was collected.

STEINERT and HOLCOMB, JJ., concur with GERAGHTY, J.